UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EDDIE DEJUAN-TOLBERT SMITH,

     Petitioner,                            Case No. 17-12748

v.

                                           HON. AVERN COHN

CARMEN PALMER,

     Respondent.

_____/

## MEMORANDUM AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS
## AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Eddie Dejuan-Tolbert Smith (Petitioner), proceeding pro se, is a state inmate serving a sentence of life without parole following his convictions on two counts of first-degree premeditated murder, M.C.L. § 750.316(1)(a); three to five years for felon in possession of a firearm, M.C.L. § 750.224f; and two years for felony-firearm. M.C.L. § 750.227b. Petitioner claims he is incarcerated in violation of his constitutional rights, raising ten (10) claims. Respondent, through the Attorney General's Office, filed a response contending that Petitioner's claims are meritless or procedurally defaulted. For the reasons that follow, the petition will be denied.

### II. Procedural History

Petitioner was convicted following a jury trial. He filed an appeal of right. The Michigan Court of Appeals affirmed his convictions. People v. Smith, No. 315842, 2014 WL 5408966 (Mich. Ct. App. Oct. 23, 2014). Petitioner then filed a pro se application for

leave to appeal with the Michigan Supreme Court, which was denied. <u>People v. Smith</u>,

498 Mich. 852 (2015).

Petitioner then filed a post-conviction motion for relief from judgment under

M.C.R. 6.500, <u>et. seq.</u>, which was denied. <u>People v. Smith</u>, No. 12-005270-01-FC

(Wayne Cty. Cir. Ct., Aug. 20, 2015).  The appellate courts denied leave to appeal.

<u>People v. Smith</u>, No. 329975 (Mich.Ct.App. Jan. 15, 2016); <u>lv. den.</u> 500 Mich. 895

(2016).

Petitioner then filed the instant petition, presenting the following claims:

I. A writ of habeas corpus should issue where informing the jury that the petitioner is charged with felony in possession of a weapon violates the petitioner's right to be tried by his jury, if he elects not to testify, without his jury knowing of his prior felony conviction and denied the petitioner his right to due process and a fair trial.

II. A writ of habeas corpus should issue where the state trial court refusal to allow defense counsel to participate in <u>voir dire</u> denied the petitioner the ability to pick an impartial jury; in the alternative, it was ineffective assistance of counsel to not request active participation in the process, both of which denied the petitioner his due process right to a fair trial pursuant to U.S. Const. Amends VI, XIV [ ].

III. A·writ of habeas corpus should issue where the state trial court erred and abused its discretion when it permitted the introduction of text messages allegedly sent by the victim, without first authenticating the text message as is required by MRE 901, thus, violative of petitioner's right to a fair trial.

IV. A writ of habeas corpus should issue where the state trial court violated the petitioner's due process right to a fair trial by allowing into evidence, over petitioner's objection, a close-up photograph of the victims' bodies which was so unfairly prejudicial and gruesome that their admission was more prejudicial than probative pursuant to U.S. Const. Am XIV.

V. A writ of habeas corpus should issue where repeated egregious comments by the prosecutor amounted to prosecutorial misconduct and denied the petitioner his due process right to a fair trial.

VI. A writ of habeas corpus should issue where the giving of a flight instruction was plain error and denied petitioner a fair trial, where the evidence did not support the inference that the petitioner fled from the scene pursuant to U.S. Const. Am. XIV [ ].

VII. A writ of habeas corpus should issue where petitioner received ineffective assistance of both trial and appellate counsel on their numerous errors, omissions, i.e., failing to investigate possible defenses, as well as, failing to object and preserve constitutional violations as articulated in arguments II, III and IV.

VIII. A writ of habeas corpus should issue where petitioner is actually innocent of the crimes in which he was charged and convicted based on newly discovered evidence that established factual innocence not mere insufficiency of evidence.

IX. A writ of habeas corpus should issue where petitioner was denied his constitutional right to confrontation by the prosecution introducing evidence to the jury that was taken outside the presence of petitioner and his defense counsel which eliminated any chances of this tainted and coerced evidence from being subjected to the rigors of cross-examination.

X. A writ of habeas corpus should issue where petitioner's constitutional right to be present at critical stages of his criminal proceedings violated by the prosecution when it held a confidential examination of their star witness in the absence of the petitioner and his defense counsel.

### III.  Facts

The material facts leading to petitioner's conviction are recited verbatim from the

Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct

on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See Wagner v. Smith, 581 F.3d 410,

413 (6th Cir. 2009):

Defendant's convictions arise from the shooting deaths of two young women, Shenil Jefferies and Kendra Wolfe, in June 2011. The women came to Detroit from Flint with defendant, a man known to them as "Twenty" or "Eddie." The prosecutor's theory at trial was that defendant killed Kendra because he believed that she had "set him up," and he killed Shenil because of her association with Kendra. The prosecution presented evidence that shortly before the murders, Shenil called her sister, Sherel Johnson Jefferies, and indicated that they had left a strip club and were on their way to defendant's

apartment. During the call, defendant purportedly took Shenil's cellular telephone and told Sherel that the women were drunk and would be fine. However, Sherel could hear the women crying and pleading for their lives, and begging defendant not to shoot them, before the telephone went dead. At one point, Sherel testified that defendant told the women that he "had too much to live for," and "they had to die."

The prosecution also presented evidence that Shenil had left voicemail messages with Sashay Johnson and Laronzo Southall. Defendant's voice was identified on the voicemails, which included threats to kill the victims. In addition to the voicemail messages, the prosecution admitted, over defense counsel's objection, text messages that Shenil sent to Southall. The text messages indicated, "[t]his dude pulled a gun on me" and that "I'm about to get killed."

The police found blood that matched Kendra's DNA at defendant's apartment, which had been vacated shortly after the offenses and appeared to have been cleaned with bleach. In addition, all of defendant's furniture and possessions had been removed from the apartment.

The victims' bodies were discovered at a vacant home. Kaitlynn Zinda, who had been involved in a sexual relationship with defendant and became pregnant, testified that the last time she saw defendant was on a weekend in June 2011. On Saturday, she picked him up outside of his apartment building and he asked her to drive to an abandoned house approximately 20 to 30 minutes away from his apartment. There, he walked to the back of the house and appeared to open the back door, then look around in the grass. He was gone for approximately five minutes. Zinda identified a photograph of the abandoned house, which was the same place where the victims' bodies were recovered. At the time, defendant told Zinda that one of his relatives had just purchased the home and that he was merely there to check on the home. After visiting the abandoned home, Zinda and defendant went to a motel to sleep. The next morning, Zinda learned from Sashay that the victims were missing. Defendant instructed Zinda not to tell Sashay he was with her, and he claimed that the women had left the strip club with different men. Defendant had Zinda drop him off at a liquor store where he said he was going to attempt to locate Kendra. After the police discovered the victims' bodies a few days later, defendant never spoke to Zinda again or returned her telephone calls. An autopsy revealed that Kendra had sustained several bruises and abrasions. The cause of death for both women was multiple gunshot wounds.

People v. Smith, 2014 WL 5408966, at * 1.

## IV.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409.  A federal habeas court shall not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)).

5

Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

Petitioner raises ten claims, some of which contain additional subclaims. The Sixth Circuit has observed: "When a party comes to us with nine grounds for reversing the district court, that usually means there are none." Fifth Third Mortgage v. Chicago Title Ins., 692 F.3d 507, 509 (6th Cir. 2012).

## V. Analysis

### A. Procedural Default

Respondent contends that several of Petitioner's claims are procedurally defaulted. Petitioner says that his trial counsel was ineffective for failing to preserve these claims at trial and/or that appellate counsel was ineffective for properly raise these claims on his direct appeal. Ineffective assistance of counsel may establish cause for procedural default. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).

A defendant must satisfy a two prong test to establish the denial of the effective assistance of counsel. First, the defendant must show that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v.

Washington, 466 U.S. 668, 687 (1984).  The defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. Id.  In other words, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Strickland, 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. Id.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  The Supreme Court's holding in Strickland places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. See Wong v. Belmontes, 558 U.S. 15, 27 (2009).  The Strickland standard applies as well to claims of ineffective assistance of appellate counsel. See Whiting v. Burt, 395 F. 3d 602, 617 (6th Cir. 2005). [1]

Here, because the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claims it is more efficient to consider the merits of these claims. See Cameron v. Birkett, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).  Each of Petitioner's claims is addressed in turn below.

## B.  Petitioner's Claims

### 1.  Claim 1 - the Stipulation

[1] The Court will not repeat the Strickland standard when addressing Petitioner's individual ineffective assistance of counsel claims.

Petitioner argues in his first claim that his right to a fair trial was violated when the jury was permitted to learn, through a stipulation, that petitioner had a previous unspecified felony conviction in order to establish one of the elements of the felon in possession of a firearm charge. Petitioner also says that trial counsel was ineffective for agreeing to stipulate that petitioner had a prior felony conviction which made him ineligible to carry or possess a firearm.

The Michigan Court of Appeals found that petitioner waived review of this claim because petitioner's lawyer stipulated that petitioner was ineligible to carry or possess a fireman because he had a prior felony conviction and agreed that the jury could be instructed on this element. People v. Smith, 2014 WL 5408966, at * 2.

Petitioner has likewise waived review of this claim on habeas review. Waiver is an "'intentional relinquishment of a known right.'" United States v. Olano, 507 U.S. 725, 733 (1993)(quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). Where a petitioner invites an error in the trial court, he or she is precluded from seeking habeas corpus relief for that error. See Fields v. Bagley, 275 F. 3d 478, 486 (6th Cir. 2001). Although petitioner did not on the record expressly or affirmatively agree to the stipulation, this does not alter this analysis. See United States v. Hicks, 495 F. App'x. 633, 642-43 (6th Cir. 2012)(defendant's stipulations to the majority of the elements for being a felon in possession of a firearm did not amount to a de facto guilty plea requiring evidence that defendant had entered into the stipulations voluntarily and knowingly). Petitioner's stipulation that he had a prior felony conviction that made him ineligible to possess or carry a firearm waives review of the first portion of his first claim.

As to whether the stipulation which resulted in a wavier amount to ineffective

assistance of counsel, the Supreme Court has held that a criminal defendant in the federal courts should be allowed to stipulate to a prior felony conviction without specifically identifying the nature and type of that conviction. See e.g., <u>Old Chief v. United States</u>, 519 U.S. 172 (1997). Such a stipulation is permissible when the name or nature of the prior criminal offense increases the risk that the jury would be influenced by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction. <u>Id.</u>; at 174. Michigan law permits a similar procedure. See <u>People v. Mayfield,</u> 221 Mich. App. 656, 660 (1997). Moreover, the Sixth Circuit observed that "factual stipulations to elements of a crime are often the product of a sound trial strategy." <u>United States v. Monaghan</u>, 409 F. App'x. 872, 877 (6th Cir. 2011). Under the circumstances, petitioner has not overcome the presumption that trial counsel's decision to stipulate that he had a prior unspecified conviction was a sound trial strategy.

Petitioner is not entitled to relief on this claim.

### 2. Claim 2 - Voir Dire

Petitioner next contends that his rights were violated when the trial court refused to permit the attorneys to conduct the <u>voir dire</u>, choosing to do so himself. Petitioner also claims that trial counsel was ineffective in failing to object to the procedure.

The Michigan Court of Appeals rejected the claim, stating:

> The record does not support defendant's claim of error. A review of the record reveals that the trial court adequately conducted a thorough inquiry into areas such as bias, the presumption of innocence, the burden of proof, and reasonable doubt. Further, the record indicates that if the attorneys needed additional inquiry, they were permitted to approach the bench to ask the trial court to obtain additional information from the jurors. Although defendant now asserts that the trial court's questioning was superficial and

did not explore issues of lying, credibility, and self-incrimination, he fails to express what additional questions should have been asked to the prospective jurors. Further, contrary to what defendant argues, the trial court did not plainly err by failing to explore the concept of reasonable doubt other than by explaining the principle and inquiring whether the prospective jurors had a philosophical or ideological disagreement with the concept. Indeed, there is no indication on the record that the jurors did not understand the concept. Overall, the record demonstrates that the scope of the trial court's voir dire was sufficient to develop a rational basis to exclude prospective jurors. Accordingly, defendant's ineffective assistance of counsel claim must also be rejected.

People v. Smith, 2014 WL 5408966, at * 3.

Clearly established federal law provides that "part of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors." Morgan v. Illinois, 504 U.S. 719, 729 (1992). Thus, "without an adequate voir dire the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." Rosales–Lopez v. United States, 451 U.S. 182, 188 (1981). The Supreme Court, however, cautioned that "[t]he adequacy of voir dire is not easily the subject of appellate review[,]." Morgan, 504 U.S. at 730. The Supreme Court emphasized that a state trial judge "retains great latitude in deciding what questions should be asked on voir dire." Mu'Min v. Virginia, 500 U.S. 415, 424 (1991). Under Fed.R.Crim.P. 24(a)(1) "[t]he court may examine prospective jurors or may permit the attorneys for the parties to do so." "The Sixth Amendment makes no mention of the voir dire process, let alone whether or not it must be conducted by the trial judge or the parties' attorneys." United States v. Sheldon, 223 F. App'x. at 480. The Supreme Court has also not specifically held that the federal constitution requires that defense counsel must be personally allowed to conduct voir dire.

10

Considering the above and given the lack of holdings by the Supreme Court on the issue of whether a state court violates a habeas petitioner's due process rights by conducting <u>voir dire</u>, the Michigan Court of Appeals' rejection of petitioner's claim was not an unreasonable application of clearly established federal law. See <u>Wright v. Van Patten,</u> 552 U.S. 120, 126 (2008); <u>Carey v. Musladin,</u> 549 U.S. 70, 77 ( 2006).

The Court rejects petitioner's related ineffective assistance of counsel claim. Michigan law and procedure permit a trial court to personally conduct <u>voir dire</u>. <u>See People v. Washington</u>, 468 Mich. 667, 674 (2003) (holding that a "defendant does not have the right to have counsel conduct the <u>voir dire</u>.") M.C.R. 6.412. Trial counsel was not ineffective for failing to raise a futile objection.

Petitioner is not entitled to relief on his second claim.

### 3. Claims 3, 7 and 4 - Evidentiary Errors

Petitioner's third and fourth claims are analyzed together because they allege errors in the admission of evidence under state law. In his third claim, petitioner alleges that his rights were violated when the judge admitted various text messages Shenil sent to Southall without authenticating them as per the requirement contained in M.R.E. 901. Petitioner also alleges in his seventh claim that trial counsel was ineffective for failing to require the authentication of the text messages. In his fourth claim, petitioner argues that his due process rights were violated by the admission of four photographs of the victims' bodies taken from the crime scene. Petitioner claims that these photographs were gruesome and unduly prejudicial.

It is well established that errors in the application of state law, especially rulings

regarding the admissibility of evidence, are usually not questioned by a federal habeas court. <u>Seymour v. Walker,</u> 224 F.3d 542, 552 (6th Cir. 2000); See also <u>Spalla v. Foltz,</u> 615 F. Supp. 224, 234 (E.D. Mich. 1985).

Petitioner's claim that the text messages were not properly authenticated under Michigan evidence law is not a viable habeas claim.  Moreover, as the Michigan Court of Appeals noted in rejecting this there was sufficient evidence that the text messages had been sent by Shenil.  <u>People v. Smith</u>,2014 WL 5408966, at * 5.  This finding is not unreasonable.  It follows that trial counsel was not ineffective for failing to object to their admission.  Petitioner is therefore not entitled to relief on his third claim or his related ineffective assistance of counsel claim.

As to his claim regarding the admission of the photographs, it too fails because it raises an issue of state law which is not reviewable.  Further, the Michigan Court of Appeals rejected the claim because the trial court had ruled "that the proffered photos were probative of whether the victims were killed at the location where they were found, and that their prejudicial effect was relatively minor." <u>People v. Smith</u>, 2014 WL 5408966, at * 6.  This was not unreasonable based on the record.  As the court of appeals correctly concluded, the photographs in this case were probative of the location where the victims' were found and were not unduly prejudicial.  Petitioner is not entitled to relief on his fourth claim.

### 4.  Claims 5, 7 - Prosecutorial Misconduct

Petitioner next contends that he was denied a fair trial because of prosecutorial misconduct.  In his seventh claim, petitioner says that trial counsel was ineffective for failing to object to the prosecutor's remarks.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." Millender v. Adams, 376 F.3d 520, 528 (6th Cir. 2004)(citing Bowling v. Parker, 344 F. 3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. Donnelly v. DeChristoforo, 416 U.S. at 643-45.  In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Parker v. Matthews, 567 U.S. 37, 48 (2012)(quoting Harrington, 562 U.S. at 103).

Petitioner essentially claims that the prosecutor committed misconduct by attacking petitioner's personal character.  Petitioner first points to the following remarks made by the prosecutor when she was questioning Kaitlynn Zinda on redirect examination:

Q [prosecutor] : Have I ever talked to you on the phone and told you what to say?

A. [Ms. Zinda]: No.

Q. Has the officer ever talked to you on the phone and told you what to say?

A. No.

Q. <u>Are you lying here because you're jealous that you lost such a winner?</u>

A. No.

(Tr. 3/7/2013, p. 72)(emphasis added).

Later, in closing arguments, the prosecutor made the following remarks:

But going back to the testimony of Sherel Johnson–Jefferies. She's trying to—Shenil is trying to explain to her sister where they're going. And that she even indicates she hears the male voice on the phone saying they drunk, they fighting, they're gonna be all right. She stays on the phone with her sister because she knows something's not right. And her sister's telling her where they're going to this place after they leave this strip club.

Now, let me say this just in passing. I, I certainly hope and trust that none of you—let me, let me start over.

<u>I certainly hope and trust that almost everybody would, here would hope that their daughters wouldn't be leaving town to go to strip clubs and run around with people like Eddie Smith.</u> But I want to point out to you that this is not a question of morals or judging people for their behavior or the mistakes that very young people may make.

We're not here to judge people's morals. <u>But based on behavior we know, I can think of someone right off the top of my head whose behavior is much more of an abomination than these ladies.</u> So let's try to focus on what's going on here in this case and not the fact that we certainly wouldn't recommend this as behaviors for these two young ladies.

(Tr. 3/12/2013, pp. 90-91)(emphasis added).

The Michigan Court of Appeals rejected petitioner's claim, finding that the prosecutor's comments were not so incendiary so as to inflame the jury's passion or distract them from determining petitioner's guilt or innocence. The court of appeals noted that the question about whether Zinda was lying was in response to defense counsel's attacks on her credibility and was an attempt to rehabilitate her. The court of appeals further found that the remarks in closing were not improper as it was a

14

summary of the evidence.  The Court agrees with the court of appeals' analysis and conclusion.  Taken in context, the prosecutor's comments do not rise to the level of prosecutorial misconduct.

As to petitioner's claim that trial counsel was ineffective for failing to object to prosecutorial misconduct.  To show prejudice under <u>Strickland</u> for failing to object to prosecutorial misconduct, petitioner must show that but for the alleged error of trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different.  <u>Hinkle v. Randle,</u> 271 F. 3d 239, 245 (6th Cir. 2001).  Because the Court has already determined that the prosecutor's comments and questions did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks.

In his reply brief, petitioner for the first time appears to be raising additional prosecutorial misconduct claims that were not raised in his habeas petition nor were they ever raised on his direct appeal or in his post-conviction proceedings in the state courts.  These claims are unexhausted and petitioner no longer has any available state court remedies with which to exhaust these additional prosecutorial misconduct claims. Where, as here, a petitioner fails to present claims to the state courts and is now barred from pursuing relief there, the claims may be considered if petitioner can show cause to excuse the failure to present the claims in the state courts and actual prejudice to his or her defense at trial or on appeal. <u>Hannah v. Conley</u>, 49 F.3d 1193, 1195-96 (6th Cir. 1995).  A claim of actual innocence will excuse this "cause and prejudice" requirement. <u>Id.</u> at 1196, n. 3.

Here, petitioner has failed to establish cause to excuse his failure to exhaust these additional claims nor has he presented any evidence to establish his actual innocence, which would allow the Court to address these additional prosecutorial misconduct claims.

Overall, petitioner is not entitled to relief on his prosecutorial misconduct claim.

### 5.  Claim 6 - Jury Instruction

Petitioner next contends that the trial court erred by giving a flight instruction that was not supported by the evidence.  The trial court instructed the jury as follows:

> Now there's also been evidence introduced here that the defendant moved out of his residence after the victims were murdered. This evidence does not prove guilt. A person may move for innocent reasons such as-or for reasons totally unrelated to the case or from panic, mistake, or fear. However, a person may do so also because of a consciousness of guilt.
>
> So you must decide whether the evidence is true, and if true, whether it shows the defendant had a guilty state of mind.

(Tr. 3/12/2013, pp. 160-61).

The Michigan Court of Appeals rejected this claim finding that there was sufficient evidence to support the instruction and noted the trial court also instructed the jury that there may be innocent explanations for petitioner's move and the trial court appropriately left resolution of the issue for the jury.

On habeas review, the question is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. Henderson v. Kibbee, 431 U.S. 145, 154-155 (1977).  Petitioner has not made such a

showing.  Based on the evidence presented, the instruction was proper and the court of appeals was correct in concluding the same.

Petitioner is not entitled to habeas relief on this claim.

### 6.  Claim 8 - Actual Innocence

In his eighth claim, petitioner argues he is entitled to habeas relief because of his actual innocence.  In Herrera v. Collins, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.  Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. Id., See also McQuiggin v. Perkins, 569 U.S. 383, 392 (2013)("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence").  Freestanding claims of actual innocence are thus not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. See Cress v. Palmer, 484 F.3d 844, 854-55 (6th Cir. 2007)(collecting cases).  Petitioner therefore cannot bring this claim.

In any event, petitioner's allegedly new evidence involves a DNA test that proves that he is not the father of Zinda's child, as she had testified to at trial. (Petitioner's Exhibit F, Doc. 1, Pg ID 35-41).  This evidence does not exonerate petitioner of the murders, but at most, could only be used to impeach Zinda on a collateral matter. Impeachment evidence does not provide sufficient evidence of actual innocence to support a free-standing innocence claim.  See Calderon v. Thompson, 523 U.S. 538, 563 (1998)(newly discovered impeachment evidence, which is "a step removed from

evidence pertaining to the crime itself," "provides no basis for finding" actual innocence);

Sawyer v. Whitley, 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence).

Petitioner is not entitled to relief on his eighth claim.

### 7. Claims 9, 7, and 10 - Investigative Subpoena Hearing

In his ninth claim, petitioner contends that his right to confrontation was violated when the prosecution was permitted to introduce statements made by Zinda during an investigative supboena hearing because neither petitioner nor his counsel were present at this hearing to cross-examine her. Petitioner in his seventh claim argues that trial counsel was ineffective for failing to object to the admission of this testimony and that his appellate counsel was ineffective for failing to raise this claim on his appeal of right. In his tenth claim, petitioner argues that he was denied the right to counsel at a critical stage of the proceedings because he did not have counsel present at this investigative subpoena hearing. None of these grounds merit relief, as explained below.

MRE 801(d)(1)(A) provides that a statement is not hearsay if:

[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition."

This rule is identical to F.R.E. 801(d)(1)(A).

Under both federal and Michigan law, a prior inconsistent statement that is made under oath is not considered hearsay and can be used as substantive evidence. See United States v. Ricketts, 317 F.3d 540, 544 (6th Cir. 2003)(citing F.R.E. 801(d)(1)(A));

People v. Chavies, 234 Mich. App. 274, 281-84; 593 N.W. 2d 655 (1999)(citing M.R.E.

18

801(d)(1)(A)). There is no Confrontation Clause problem when the witness testifies at trial and is subject to unrestricted cross-examination. United States v. Owens, 484 U.S. 554, 560 (1988); See also Crawford v. Washington, 541 U.S. 36, 59, n. 9 (2004); U.S. v. Mayberry, 540 F. 3d 506, 516 (6th Cir. 2008). The admission of a witness's prior inconsistent statement pursuant to F.R.E. 801(d)(1)(A) does not violate the Confrontation Clause where the witness testifies at trial, concedes making the prior statements, and is subject to cross-examination. See California v. Green, 399 U.S. 149, 164 (1969); Mayberry, 540 U.S. at 516.

Here, Zinda testified at trial and acknowledged making the prior statements at the investigative subpoena testimony. Zinda was subject to extensive, unrestricted cross-examination regarding his prior statement. Because Zinda testified at petitioner's trial and was subject to cross-examination, the admission of her prior statements from the investigative subpoena hearing did not violate petitioner's right to confrontation. It follow that neither trial and appellate counsel were not ineffective for failing to object to its admission on this basis.

Petitioner is also not entitled to relief because he failed to show that he was denied counsel at a critical stage of the criminal proceedings. The Sixth Amendment right to counsel "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Texas v. Cobb, 532 U.S. 162, 167-68 (2001)(quoting McNeil v. Wisconsin, 501 U.S. 171, 175 (1991)(internal citations and quotation marks omitted); See also Davis v. U.S., 512 U.S. 452, 456-57 (1994).

The investigative subpoena hearing took place on June 24, 2011.  Petitioner was not charged until June 29, 2011.  "Where a case is still in the investigative stage, or in the absence of a person's being charged, arrested, or indicted, such adversary proceedings have not yet commenced, and thus no right to counsel has attached." United States v. Kenny, 645 F.2d 1323, 1338 (9th Cir. 1981).

Overall, petitioner is not entitled to relief based on his claims regarding the investigative subpoena.

### 8.  Claim 7 - Remaining Allegations of Ineffective Assistance of Counsel

The Court will now address the remaining ineffective assistance of counsel subclaims which are raised in claim seven.

Petitioner first claims that his trial counsel was ineffective for re-introducing perjured testimony that had previously been stricken at the preliminary examination while cross-examining Zinda at trial.

The Court has reviewed trial counsel's cross-examination.  It appears that trial counsel was attempting to cross-examine Zinda with her inconsistent testimony from the preliminary examination.  Although the prosecutor at some point objected to defense counsel's questions on the ground that Zinda's prior testimony had been stricken at the preliminary examination, trial counsel replied that most of the testimony had not been stricken.  Trial counsel was permitted to continue with his cross-examination of Ms. Zinda.  (Tr. 3/7/13, pp. 70-82).

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." Dell v. Straub, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002).  "Impeachment strategy is a matter of trial tactics, and tactical

decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." Id.

Here, trial counsel was confronting Zinda with prior inconsistencies from her testimony at the preliminary examination. Petitioner fails to establish how this was deficient or prejudicial.

Petitioner next contends that trial counsel was ineffective for failing to call the apartment manager to establish that petitioner was not living at the apartment where the victims were murdered. (Doc. 14, Pg ID 1817-20). Petitioner, however, has not attach any affidavit from this apartment manager concerning his or her proposed testimony nor did he provide any such affidavit when he filed his post-conviction motion in the state courts. Petitioner has not offered any evidence beyond his own assertions as to whether the manager would have been able to testify and what the content of his or her testimony would have been. In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call the apartment manager to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim.

Petitioner further says that trial counsel was ineffective in failing to call a voice recognition expert to disprove the prosecution's theory that it was petitioner's voice on the voicemail. Petitioner also says that appellate counsel was ineffective for failing to challenge the lack of authentication of the voicemail. (Doc. 14, Pg 1821).

A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. See Keith v. Mitchell, 455 F. 3d 662, 672 (6th Cir. 2006). Petitioner has not offered any evidence that there is a voice

recognition expert who would have challenged the prosecution's theory that it was petitioner on the voicemail message. Petitioner is therefore not entitled to relief on this claim. As to appellate counsel claim, petitioner has not presented evidence that this voicemail was not properly authenticated; thus, appellate counsel was not ineffective for failing to raise this claim on direct appeal.

Petitioner also argues that trial and appellate counsel were ineffective for failing to challenge Zinda's voice identification of petitioner after she was allowed to hear the voicemail messages. (Doc. 14, Pg ID 1822). "The identification of the voice of a person suspected of a crime as the voice of a suspected criminal is admissible evidence." <u>Alder v. Burt,</u> 240 F. Supp. 2d 651, 674 (E.D. Mich. 2003)(citing <u>Stovall v. Denno</u>, 388 U.S. 293, 295 (1967)). Counsel is not ineffective for failing to object to admissible evidence. See <u>United States v. Sanders</u>, 404 F.3d 980, 986 (6th Cir. 2005).

Finally, petitioner finally claims that appellate counsel was ineffective for failing to raise a newly discovered evidence claim based on the DNA finding that petitioner was not the father of Zinda's child. (Doc. 14, Pg ID 1822). Petitioner claims that this evidence could have been used to impeach Ms. Zinda's credibility.

Appellate counsel was not ineffective for failing to seek a new trial based on this allegedly newly discovered evidence. As explained above, evidence that petitioner was not the father of Zinda's child did not exonerate petitioner of the murders, but at most could have been used to impeach Zinda's credibility on a relatively collateral matter.

Petitioner is therefore not entitled to habeas relief on any of his allegations of ineffective assistance of counsel.

### C. Renewed Motion for Discovery

Petitioner renews his request for discovery of the videotape footage from the Cheetah's Night Club from the night in question, claiming it will demonstrate he was not at the night club with the victims that night and hence could not have murdered them.

A district court may permit discovery in a habeas case if the petitioner presents specific allegations which give the court reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate.  See <u>Johnson v. Mitchell,</u> 585 F.3d 923, 934 (6th Cir. 2009).  However, Rule 6 of the Habeas Rules does not "sanction fishing expeditions based on a petitioner's conclusory allegations." <u>Williams v. Bagley</u>, 380 F. 3d 932, 974 (6th Cir. 2004)(internal quotation omitted).  A habeas petitioner's conclusory allegations are insufficient to warrant discovery under Rule 6. <u>Id.</u>  Instead, the petitioner must set forth specific allegations of fact. <u>Id.</u>

Petitioner has failed to show that he is entitled to discovery of this information. Petitioner has pointed to no facts which would suggest that the videotape is exculpatory, particularly since it would do nothing to exonerate petitioner of the murders.  Petitioner's mere speculation that the videotape may contain exculpatory information would not entitle him to discovery of the tape.  Thus, he is not entitled to discovery.

## VI.  Conclusion

For the reasons stated above, the state courts' rejection of petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable

application of Supreme Court precedent, or an unreasonable determination of the facts. Accordingly, the petition for a writ of habeas corpus is **DENIED.**

Furthermore, reasonable jurists would not debate the Court's assessment of petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore **DECLINES** to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2). [2] See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

      **SO ORDERED.**

                  S/Avern Cohn_____
                  AVERN COHN
                  UNITED STATES DISTRICT JUDGE

Dated: 6/14/2018
      Detroit, Michigan

---

[2] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.